# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Hue Y.,[1]                                          Case No. 23-cv-209 (ECT/DJF)

              Plaintiff,

v.                                          **REPORT AND RECOMMENDATION**

Martin J. O'Malley,
*Commissioner of Social Security*,

              Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Hue Y. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Decision"). This matter is before the Court on the parties' briefs. The undersigned considers the briefs pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. Because further development of the record is necessary to determine whether substantial evidence supports the Administrative Law Judge's ("ALJ") assessment of various medical opinions cited in the Decision, the Court recommends granting Plaintiff's request for relief in part and remanding this matter to the Social Security Administration ("SSA") pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Report and Recommendation.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

1

## BACKGROUND

### I.    Plaintiff's Claim

On April 29, 2021, Plaintiff filed an application for DIB and SSI alleging a disability onset date of October 2, 2019.[2]  (*See* SSA Record (hereinafter "R.") 26.)  At that time, he was a 40-year-old man with a 10th grade education and previous work as a cable installer and plastic product assembler.  (R. 35, 82.)  He alleged disability due to: depression; anxiety; vision issues, including poor vision and flashes in the eye; left-side numbness and pain; and side-effects from a stroke, including paralysis and aphasia. (R. 118.)  His first language is Hmong.  (R. 26, 105, 388.)

### II.    Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C.  § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C.  § 1382c(a)(3)(D).

---

[2] The SSA record (R.) is filed at ECF No. 9.  For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish he is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must then establish at step two that he has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[3] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving he cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform other work existing in a significant number of jobs in the national economy, the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

## III.  Procedural History

The Commissioner denied Plaintiff's DIB and SSI claims initially (R. 96–138) and on reconsideration (R. 144–163). Plaintiff requested a hearing (R. 204–206), and the ALJ conducted

---

[3] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

3

a hearing on July 13, 2022 via telephone (R. 74–95). Plaintiff and a vocational expert ("VE") testified at the hearing. (*Id.*) Plaintiff was represented by an attorney and assisted by a Hmong language interpreter. (*Id.*)

The ALJ considered whether Plaintiff was disabled within the meaning of the Social Security Act from October 2, 2019, his alleged disability onset date, through the date of the Decision. At step one of the five-step sequential analysis, the ALJ determined Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (R. 29.) The ALJ determined at step two that Plaintiff had the following severe impairments: headaches; hypertension; adjustment disorder with mixed anxiety and depressed mood; depression; schizoaffective disorder; and status post-stroke. (*Id.*) He further found Plaintiff had vision issues and experienced visual disturbances, which were non-severe impairments. (R. 29–30.) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment in the Listing. (R. 30–33.)

The ALJ then turned to step four and considered Plaintiff's RFC. The ALJ thoroughly catalogued the mental and physical health evidence in the record, including Plaintiff's subjective allegations, his medical records, and relevant medical opinion evidence. (R. 33–45.) In considering this evidence, the ALJ stated that he applied the requirements of 20 CFR §§ 404.1529 and 416.929 and SSR 16-3p. (R. 33.) He further stated that he considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 CFR §§ 404.1520c and 416.920c. (*Id.*) The ALJ reviewed multiple medical opinions in determining Plaintiff's RFC, including the opinions of: (1) Dr. Jill Adams, Plaintiff's treating psychologist; (2) Dr. Monique Bordeaux, consultative examiner; (3) Drs. Maria Yapondlian-Alvarado and Ray

Conroe, state agency psychological consultants; and (4) Drs. Jonathan Katz and Hallie Richards, state agency medical consultants.  (R. 43–45.)

The ALJ found treating psychologist Dr. Adams' opinion to be unpersuasive.  Dr. Adams filled out a check-the-box style questionnaire stating that, from December 16, 2021 to April 15, 2022, Plaintiff: (1) met the DSM-V definition for schizoaffective disorder and was on the schizophrenia spectrum; (2) had medical documentation reflecting delusions or hallucination, disorganized thinking, and grossly disorganized behavior; (3) had medical documentation reflecting depressive disorder, characterized by: depressed mood; diminished interest in almost all activities; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; and thoughts of death or suicide; (4) was markedly limited in his ability to: understand, remember, or apply information; interact with others; and adapt and manage oneself; (5) was extremely limited in his ability to concentrate, persist or maintain pace; and (6) had a medically documented history of his disorder for a period of at least two years, with evidence of: (a) medical treatment, mental health therapy, psychosocial support, or highly structured settings that was ongoing and that diminished the symptoms and signs of the mental disorder; and (b) minimal capacity to adapt to changes in the environment that were not already a part of his daily life.  (R. 751–765.)

The ALJ found Dr. Adams' opinion unpersuasive because she checked the boxes without explanation and did not support her conclusions with any reference to objective medical findings. (R. 45.)  The ALJ also found Dr. Adams' opinion was inconsistent with the evidence overall, including medical records in which Plaintiff acknowledged his hallucinations had been treated effectively with medication, Dr. Adams' own treatment records, medical records in which Plaintiff

acknowledged working and spending more time with his family, documentation of Plaintiff working, and Plaintiff's adult functioning reports. (R. 45.)

The ALJ found consultative examiner Dr. Bordeaux's opinion to be partially persuasive. Dr. Bordeaux determined that Plaintiff was: (1) able to understand, remember, and follow direction; (2) moderately able to sustain attention, concentration, persistence, and pace; (3) able to respond appropriately to contact with others; and (4) moderately able to tolerate the mental stressors of "at least an entry-level workplace." (R. 635.) The ALJ found her opinion only partially persuasive for two reasons. (R. 44.) First, the ALJ stated Dr. Bordeaux's opinion that Plaintiff was moderately able to sustain attention, concentration, persistence, and pace is a description of the severity of mental impairments at steps two and three of the sequential evaluation process, but opinions regarding a claimant's RFC require a substantially more detailed assessment of mental functioning. Second, the ALJ critiqued Dr. Bordeaux's opinion that Plaintiff was moderately able to tolerate the stressors of "at least" an entry-level workplace on the ground that an opinion concerning RFC must specify the most that the claimant is capable of doing; not the least. (R. 44.)

The ALJ found the opinions of the state agency psychologists, Drs. Yapondlian-Alvarado and Conroe to be partially persuasive. At the initial level, Dr. Yapondlian-Alvarado determined Plaintiff was subject to medically determinable impairments that did not precisely satisfy the criteria for impairments in the Listing. (R. 126.) She found his impairments caused mild limitations in understanding, memory, remembering, or applying information and in interacting with others, and moderate limitations in concentrating, persisting, or maintaining pace and in adapting or managing oneself. (*Id.*) She further concluded that: Plaintiff's ability to carry out tasks with adequate persistence and pace would be adequate for completion of detailed tasks, but not complex tasks; his ability to respond appropriately to changes in the workplace would be

adequate to tolerate occasional workplace changes; and he retained the ability to perform detailed tasks on a sustained basis in the work setting with occasional workplace changes. (R. 134–35.) Dr. Conroe agreed with Dr. Yapondlian-Alvarado's administrative medical findings at the reconsideration level. (*See* R. 157, 161.)

In explaining his assessment of these opinions, the ALJ stated they were "partially persuasive, to the extent that they are not generally consistent with the evidence overall[.]" (R. 44–45.) In the ALJ's view, the overall evidence instead dictated that Plaintiff: had a moderate limitation in interacting with others; is limited to simple routine tasks in work environment free of fast-pace production requirements; is limited to low stress work, involving only simple, work-related decisions and routine workplace changes; is limited to occasional interaction with coworkers and supervisors with no transactional interaction with the public; and is limited to work dealing with things rather than people, with no tandem tasks or teamwork. (R. 44.)

The ALJ found the opinions of the state agency medical consultants, Drs. Katz and Richards, to be partially persuasive. Dr. Katz determined Plaintiff has the RFC to sustain medium work subject to the following additional limitations: no more than frequent climbing of ramps/stairs; no climbing of ladders/ropes/scaffolds; must avoid concentrated exposure to wetness and noise; he must avoid even moderate exposure to hazards, such as unprotected heights and dangerous equipment/machinery; and he should not drive without medical approval. (R. 108–110, 114.) At the reconsideration level, Dr. Richards adopted these findings. (R. 148–150, 152.) The ALJ found these doctors' opinions only partially persuasive because the only explanation that accompanied their conclusions was the assertion that a medium work limitation was warranted due to Plaintiffs' headaches and vision-related allegations. (R. 44–45 125.) The ALJ acknowledged that Dr. Katz referred to summaries of medical and other evidence, including medical records

prepared in March 2021, May 2021, and June 2021, but found the state agency medical consultants failed to provide any analysis or explanation of how specific objective medical findings documented in Plaintiff's record translated into a medium residual functional capacity because of headaches and vision issues. (R. 44.)

Based on the record evidence and his findings regarding the persuasiveness of these doctors' opinions, the ALJ determined that:

> [Plaintiff] has a residual functional capacity to perform a range of work at a "medium" level of exertion, as defined in 20 CFR 404.1567(c) and 416.967(c), except he cannot climb ladders, ropes, or scaffolds; can frequently, but not constantly, climb ramps and stairs; can have only occasional exposure to wetness; is limited to a work environment where objects do not enter from the left side, such as on an assembly line; is limited to a work environment where the noise intensity level does not exceed "moderate" as that term is defined in the Selected Characteristics of Occupations (SCO); can have no exposure to hazards, such as unprotected heights or dangerous, moving machinery; is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e., no work on an assembly line); is limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes; is limited to occasional interaction with co-workers and supervisors; is limited to no transactional interaction with the public, i.e., sales, negotiation, customer service, or resolution of disputes; the work itself should deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

(R. 33.) Having reached this RFC determination, the ALJ concluded Plaintiff was not capable of performing any of his past relevant work. (R. 45–46.)

At step five, the ALJ evaluated Plaintiff's ability to transition to other work, taking into account Plaintiff's age, education, work experience and RFC. (R. 46.) The ALJ concluded Plaintiff was a younger individual, with no transferrable job skills, and a limited education due to the fact that he had only completed the 10th grade. (R. 35, 46.) As relevant to Plaintiff's challenge here, the ALJ did not take Plaintiff's fluency, or lack of fluency, in English into account.

The ALJ then solicited testimony from the VE regarding whether there are any other positions in the national economy that a hypothetical person with Plaintiff's age, education, work experience and RFC could perform.  (R. 47, R. 92-93.)  The VE testified such a person could perform the following jobs: Laundry Worker, Dictionary of Occupational Titles ("DOT") #361.684-014 (85,000 jobs nationally); Scrap Sorter, DOT #929.687 (75,000 jobs nationally); Bagger, DOT #920.687-018 (60,000 jobs nationally); Stuffer DOT #789.687-130 (220,000 jobs nationally); and Trimmer, DOT #781.687-070 (52,000 jobs nationally).  (R. 46–47.)  Plaintiff's attorney had an opportunity to question the VE regarding these jobs and the VE's data sources regarding the number of jobs existing in the national economy but declined to do so.  (R. 94–95.)  Based on the VE's testimony, the ALJ concluded Plaintiff could perform these jobs and that they existed in sufficient numbers in the national economy, such that Plaintiff was not disabled for purposes of DIB or SSI.  (R. 47.)  This lawsuit followed.

## DISCUSSION

### I.    Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This "threshold … is not high." *Id*.  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989, 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.    Analysis

Plaintiff raises three arguments. First, he contends the ALJ improperly failed to consider Plaintiff's inability to speak fluent English in evaluating his ability to transition to other jobs. (ECF No. 16 at 6–10.) Second, he argues the ALJ's determination that he can perform other jobs existing in significant numbers in the national economy lacks substantial evidence because the ALJ failed to *sua sponte* inquire into the basis for the VE's job-number testimony. (*Id.* at 10–12.) Third, he argues the ALJ erred in evaluating the medical opinion evidence, including the opinions of Drs. Adams, Bourdeax and the state agency psychological experts. (*Id.* at 12–16.) For the reasons given below, the Court finds the ALJ's findings are insufficient to permit meaningful judicial review and recommends remanding this matter for further development of the record.

### A.    Plaintiff's English Fluency

Plaintiff argues the ALJ improperly failed to consider his limited ability to communicate in English in concluding at step five that he could perform other jobs in the national economy. (*Id.* at 6.) He points to evidence in the record indicating he lacks English fluency, including: statements in his application self-reporting that he cannot speak English and that his preferred language is Hmong (R. 388); that he self-reported he had poor English skills, no early education, poor reading ability and poor math skills (R. 390); that a Hmong interpreter was present at his hearing before the ALJ (R. 27, 76, 472); that Dr. Bordeaux noted at his consultative examination that Plaintiff used an interpreter 50% of the time (R. 631–635); and that his doctor noted a significant language barrier at a January 27, 2022 medical visit without an interpreter present. (R. 711, 716.) Plaintiff notes that each of the jobs the ALJ found he could perform—Laundry Worker, DOT #361.684-014; Scrap Sorter, DOT #929.687; Bagger, DOT #920.687-018; Stuffer DOT #789.687-130; and Trimmer, DOT #781.687-070—requires the ability to "[s]peak simple sentences, using normal word order and present and past tenses." (ECF No. 16 at 8.) Plaintiff argues the ALJ's finding that he had a "limited education," with no analysis of his ability to communicate in English, erroneously failed to take this job requirement into account. (ECF No. 16 at 6, 9-10.)

Plaintiff's contention that his language limitations could impede his ability to obtain other work makes intuitive sense, but Plaintiff's job history—including skilled and semi-skilled positions as an antenna installer and product assembler—undermines it. (*See* ECF No. 18 at 6–7.) Furthermore, under current regulations the ALJ was not required to take his lack of English fluency into account. *See R.M. v. Kijakazi*, 22-cv-2969 (JRT/ECW), 2023 WL 6164296, at *4 (D. Minn.

Aug. 25, 2023), *report and recommendation adopted sub nom.*, 2023 WL 6163957 (D. Minn. Sept. 21, 2023).  Though, in the past, the SSA defined a claimant's inability to communicate in English as an educational category at step five, *see* 85 Fed. Reg. 10586-10587 (Feb. 25, 2020), "effective April 27, 2020, the agency eliminated the educational category 'inability to communicate in English.'"  *R.M.*, 2023 WL 6164296, at \*4 (quoting *Removing Inability to Communicate in English As An Education Category*, 85 Fed. Reg. 10586-01, 2020 WL 885690 (Feb. 25, 2020)).  "When finalizing the regulation amendment, the [SSA] explained that changes in the national economy indicate that employment rates for people with limited English proficiency have increased since 1980, which suggests that English proficiency is no longer a useful category describing a claimant's 'educational attainment or of the vocational impact of an individual's education for the purposes of our programs,' as it was in 1978, when the former regulation was written."  *Salimeh N. v. Comm'r of Soc. Sec.*, No. C21-1523 (SKV), 2022 WL 1963719, at \*4 (W.D. Wash. June 6, 2022) (quoting 85 Fed. Reg. 10586-01, 10587, 2020 WL 885690 (Feb. 25, 2020)).  Moreover, in effecting this change, the SSA rejected a commentator's objection on the ground that the DOT has a language component in its job descriptions, such that the ability to communicate in English must be a relevant factor.  *See R.M.*, 2023 WL 6164296, at \*6 (citing  85 Fed. Reg. 10586-01, 10591).  The SSA thus explicitly rejected the argument Plaintiff advances here.   Under the revised regulations, the SSA "will not consider whether an individual attained his or her education in another country or whether the individual lacks English proficiency."  SSR 20-1p, 2020 WL 1083309 (Mar. 9, 2020); *see also id.* ("When this rule becomes effective, we will no longer consider whether an individual is able to communicate in English" at step five "of the sequential evaluation process").

Plaintiff applied for DIB and SSI on April 29, 2021 (*see* R. 26), so there is no question that the new rule applies to his claims. *See* 85 Fed. Reg. 10586-01, 2020 WL 885690 (stating the SSA would follow its standard practice of implementing the final rule "as of the effective date for all pending claims"). Because a lack of English language proficiency is no longer a factor the SSA must consider when determining a claimant's disability eligibility, *see R.M.*, 2023 WL 6164296, at *6 (citing *Bilotta v. Saul*, 850 F. App'x 162, 167 n. 7 (4th Cir. 2021)); *Vang v. Comm'r of Soc. Sec.*, 1:21-cv-00488 (SAB), 2022 WL 17812859, at *6 (E.D. Cal. Dec. 19, 2022)), Plaintiff's argument that the ALJ committed legal error in failing to consider it at step five lacks merit.

### B.    The Number of Jobs in the National Economy

Plaintiff also challenges the Decision on the ground that the ALJ's conclusions regarding job numbers are not adequately supported. Plaintiff argues the Supreme Court's decision in *Biestek v. Berryhill* creates a duty for VEs to "both cite their sources and describe the method they used to calculate jobs[,]" failing which the ALJ cannot rely on the VE's estimates to conclude that a claimant can perform jobs existing in substantial numbers in the national economy. (ECF No. 16 at 11–12.) Plaintiff contends that in this case the VE did not provide any data or sources for his job number estimates, and therefore, the Decision is not supported by substantial evidence. (*Id.* at 12.)

Plaintiff's argument fails for multiple reasons. As a threshold matter, Plaintiff participated in the hearing with his attorney, who had an opportunity to ask the VE for additional support and declined to do so. (R. 94–95.) Plaintiff's failure to ask the VE about "the evidentiary basis for his [job number] estimates" or "cross-examine the VE as to the accuracy of those estimates" constitutes a waiver of any claim challenging those estimates on appeal. *See Nicolas J. v. Kijakazi*, No. 20-cv-1340 (WMW/ECW), 2022 WL 1109810, at *27 (D. Minn. Jan. 20, 2022) (quoting

*Shaibi v. Berryhill*, 883 F.3d 1102, 1108-10 (9th Cir. 2017)), *report and recommendation adopted sub nom.*, 2022 WL 807605 (D. Minn. Mar. 17, 2022).

Next, courts in this circuit have rejected Plaintiff's interpretation of *Biestek*, holding that ALJs are not under a per se obligation to inquire into the data underlying a VE's job number estimates. *See, e.g.*, *Lovett v. Saul*, No. 4:19-cv-2126 (JAR), 2020 WL 1984014, at *4-5 (E.D. Mo. Apr. 27, 2020). Instead, as *Biestek* explained, even in many cases when a claimant requests the data from the VE underlying his job numbers estimates and the VE refuses to provide that data, "the expert's testimony still will clear (even handily so) the more-than-a-mere scintilla threshold." *Biestek*, 139 S. Ct. at 1157.

Finally, the Court cannot conclude on the record before it that substantial evidence regarding the number of available jobs is lacking. The VE testified that he based his opinion and testimony on: "Forty-five years of job placement, working with employers and two separate jobs as a departmental manager at two separate hospitals." (R. 94.)  Plaintiff's attorney did not object to his qualifications to testify as a VE. (R. 91.)  The VE cogently answered all the ALJ's questions (R. 90–95) and indicated where his testimony was or was not consistent with the DOT and Selected Characteristics of Occupations Defined in the Revised DOT ("SCO") (R. 94). (R. 94–95.) Moreover, Plaintiff has proffered no evidence purporting to undermine or contradict the VE's job number estimates. The ALJ's determination thus was grounded in coherent, uncontroverted testimony from an unopposed expert in the field. This testimony was sufficient to meet the substantial evidence threshold. *See, e.g.*, *Tina E. v. Berryhill*, No. 1:17-cv-00649, 2019 WL 3229196, at *18 (W.D.N.Y. July 18, 2019) (finding, post-*Biestek*, that the ALJ's decision was supported by substantial evidence when the VE did not disclose how she came to her job number

determination).  Plaintiff's challenge to the ALJ's findings at step five should be denied for these reasons.

### C.    Evaluation of the Medical Opinions

Plaintiff further argues the ALJ erred in failing to properly analyze the medical opinion evidence in determining his RFC.  For an opinion to constitute a medical opinion under the regulations, it must be "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in a range of abilities.  20 C.F.R. § 404.1513(a)(2).  Though an ALJ is not required to defer to a treating or examining medical provider's opinion, he must apply certain regulatory factors in evaluating the opinion's persuasiveness.  *See* 20 C.F.R. § 404.1520c(a).  These factors are: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors that may support or contradict the medical opinion.  20 C.F.R. §§ 404.1520c(a)-(c).  The two most important factors for the ALJ to consider are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  Plaintiff's challenge is premised largely on the contention that the ALJ did not properly articulate the "supportability" and "consistency" factors in evaluating the medical opinion evidence.  (ECF No. 16 at 13.)

#### 1.    Dr. Adams' Opinion

Plaintiff first takes issue with the ALJ's conclusion that Dr. Adams' opinion was unpersuasive.  (ECF No. 16 at 14–15.)  He argues the ALJ's assessment of that opinion was conclusory and improper because the ALJ relied on the "mere absence of treatment notes" and failed to present any contradictory evidence.  (*Id.* at 14.)  Plaintiff focuses on two of Dr. Adams'

opinions in particular: (1) that Plaintiff has grossly disorganized behavior or catatonia; and (2) that Plaintiff is extremely limited in his ability to concentrate, persist, or maintain pace. (*Id.*)

In making this argument, Plaintiff ignores the ALJ's careful and detailed explanation of why he found Dr. Adams' opinion lacked supportability and consistency. The ALJ first critiqued Dr. Adams' report because it did not explain why she reached her conclusions and did not support them with any reference to objective medical findings. (R. 45.) The Eighth Circuit has repeatedly held that "check-the-box" style questionnaires are entitled to "relatively little evidentiary value on [their] face[.]" *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (quoting *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022)) (bracket added). This is especially true when the practitioner leaves blank the short answer section of the form asking what objective medical findings supported her assessment. *Id.* (citation omitted). In this case, Dr. Adams checked boxes on a form indicating her responses, but she did not provide any rationale for them or fill in the "Consultant's Notes" section of her questionnaire allowing for a supporting explanation. (*See* R. 751–765.)

The ALJ further provided a litany of examples illustrating why he found Dr. Adams' opinion was inconsistent with the record, including: (1) medical records in which Plaintiff acknowledged that, since he began taking the medication Seroquel, he was unbothered by hallucinations; (2) Dr. Adams' own records, which did not mention grossly disorganized behavior or catatonia; (3) medical records in which Plaintiff acknowledged working and spending more time with family, which conflicted with Dr. Adams' opinion that he had a marked limitation in interacting with others; (4) documentation of Plaintiff working, which conflicted with Dr. Adams' conclusion that he was "extremely limited" in his ability to concentrate, persist or maintain pace; and (5) Plaintiff's adult functioning reports, showing he denied problems with personal care, such as dressing, bathing, and feeding himself (*see* R.31), which conflicted with Dr. Adams' opinion

that Plaintiff was markedly limited in adapting and managing oneself.  (R. 45.)  The ALJ addressed both the consistency and supportability of Dr. Adams' opinion and provided a well-reasoned rationale for his findings with specific citations to the record.  The Court finds the ALJ's evaluation of Dr. Adams opinion complied with the regulations.

### 2.      Dr. Bordeaux's Opinions

Plaintiff also challenges the ALJ's finding that the opinions of the consultative examiner, Dr. Bordeaux, were only partially persuasive.  The ALJ questioned Dr. Bordeaux's opinion that Plaintiff was "moderately able to sustain attention, concentration, persistence, and pace" (R. 635) on the ground that it described the severity of his mental impairments under step three, but that an opinion concerning his RFC required a substantially more detailed assessment of his mental functioning (R. 44).  The ALJ also critiqued Dr. Bordeaux's opinion that Plaintiff was "moderately able to tolerate the mental stressors of at least an entry level workplace" (R. 635) on the ground that an opinion concerning residual functional capacity must specify the most that the claimant is capable of doing; not the least.  (*Id.*)  The Government argues the ALJ was suggesting Dr. Bordeaux's report did not constitute medical opinion evidence, such that he did not need to address its supportability and consistency.  (ECF No. 18 at 13, "It is not that the ALJ found Dr. Bourdeaux's report conflicted with the record.  Rather, the issue is that some of Dr. Bourdeaux's conclusions fell short of SSA's definition of a medical opinion because they did not address limitations and abilities in a way relevant to residual functional capacity.")

As a threshold matter, the ALJ was required to apply the regulations applicable to consultative examiners' reports.  *See* 20 C.F.R. § 404.1519p; 20 C.F.R. § 416.919p.  Under these regulations, the ALJ had an obligation to address any deficiencies in the report by contacting Dr. Bordeaux, explaining his evidentiary needs, and asking that she furnish any missing information

or prepare a revised report.  *See id.*; *see also Shanda v. Colvin*, No. 14-cv-1838 (MJD/JSM), 2015 WL 4077511, at *30 & n.26 (D. Minn. July 16, 2015) (holding that it is "reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.")  The Decision does not indicate that the ALJ made any request to Dr. Bordeaux to modify or supplement her report.

Furthermore, the Government's explanation—that the ALJ did not view the report as stating medical opinions—conflicts with the Decision, which refers to Dr. Bourdeaux's report as "medical opinion evidence."  (R. 43.)  If the ALJ had determined Dr. Bordeaux's report did not satisfy the regulatory definition of medical opinion evidence, he could have said so.  Instead, he stated only that her opinions were "partially persuasive."  (R. 44.)  Since the Decision refers to Dr. Bordeaux's report as "medical opinion evidence" and the ALJ did not address—at all—which parts of Dr. Bordeaux's opinions are inconsistent with which parts of the record or any other expert opinion, the Court cannot determine whether the ALJ's decision is supported by substantial evidence on the record, and recommends this matter be remanded for further analysis.  *See Susan H. v. Kijakazi*, 21-cv-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023) (finding that a failure to address supportability and consistency constitutes legal error requiring remand).

### 3.     The State Agency Consultants' Opinions

Plaintiff also argues the ALJ erred in determining that the state agency consultants' opinions were partially persuasive.  (ECF No. 16 at 16; ECF. No. 19 at 19.)  Plaintiff's argument is not well articulated (*see* ECF No. 16 at 16, referring vaguely to the "Agency opinions" without clearly identifying the agency consultants at issue), but he appears to take issue with the ALJ's determination that the state agency psychologists' opinions were "partially persuasive" since the

Decision did not address the fact that these opinions predated his diagnosis with schizoaffective disorder (*see id.*; *see also* ECF No. 19 at 19).

Plaintiff's medical records establish that Plaintiff's treating psychologist, Dr. Adams, diagnosed him with schizoaffective disorder on December 16, 2021.  (R. 740–41.)  Agency psychologist Yapondlian-Alvarado reported her findings regarding Plaintiff's mental RFC at the initial administrative level on July 6, 2021.  (R. 132-35.)  Dr. Conroe reported his findings at the reconsideration level on September 29, 2021.  (R. 160-61.)  Both of the agency psychologists' opinions thus predated Plaintiff's diagnosis with schizoaffective disorder.

The ALJ found the agency psychologists' opinions "partially persuasive" and then determined Plaintiffs' RFC based on findings that were largely more restrictive than they recommended.  For example, Drs. Yapondlian-Alvarado and Conroe found Plaintiff's impairments caused a "mild" limitation in his ability to interact with others (R. 126, 147), while the ALJ determined he is subject to a "moderate" limitation (R. 44).  They found him capable of completing detailed, but not complex tasks (R. 134, 161), while the ALJ determined he is limited to simple, routine tasks, and specified that he is limited to low stress work in an environment free of fast-paced production requirements. (R. 44.)

But the Decision is strikingly devoid of any particular rationale for the ALJ's deviation from their recommendations, only stating summarily that they were "partially persuasive, to the extent that they are not generally consistent with the evidence overall[.]"  (R. 44–45.)  The Court cannot discern from this conclusory statement whether the ALJ's assessment of their opinions took into account Plaintiff's more recent diagnosis with schizoaffective disorder, or whether the ALJ was guided by inconsistencies with the record or other factors.  Since the Decision provides no explanation for why certain parts of these consultants' opinions lack supportability or are

inconsistent with the record, the Court cannot determine whether the ALJ's decision is supported by substantial evidence based on the record as a whole. This deficiency in opinion writing constitutes legal error for which a remand is warranted. *See Susan H*, 2023 WL 2142786, at *3. Based on the foregoing, the Court recommends that this matter be remanded for further development of the administrative record.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff's Request for Relief (ECF No. [16]) be **GRANTED IN PART DENIED IN PART**;

2.    The Commissioner's Request for Relief (ECF No. [18]) be **GRANTED IN PART DENIED IN PART**;

3.    The Decision be **REVERSED**; and

4.    This matter be remanded to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Report and Recommendation.


Dated: December 29, 2023                    *s/ Dulce J. Foster*
                                            Dulce J. Foster
                                            United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).